## Silsby *v.* Knauff, Appellant.

*Lease—Oil and gas lease—Test of well.*

1. Where an oil lease provides that the lessor shall "pay the half of the drilling expenses of the first well, providing said first well does not produce five barrels of oil per day after thoroughly tested," the lessor will not be liable unless the lessee drills the first well to a proper depth to reasonably test the land for oil in accordance with the knowledge of experienced oil men as to the territory in the vicinity at the time the test is made.

2. The words "thoroughly tested" as used in the lease mean more than simply drilling a well to any depth that the lessee elects, and then testing that well.  The lessor was entitled to have the well drilled into all the oil-producing sands underlying his land in accordance with knowledge of experienced oil men.

Argued May 13, 1913.  Appeal, No. 84, April T., 1913, by defendant, from judgment of C. P. Butler Co.,

Sept. T., 1912, No. 66, on verdict for plaintiff in case of C. A. Silsby for use of H. W. Leonard v. A. H. Knauff.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.    Reversed.

Assumpsit to recover half of the expenses of drilling an oil well.   Before GALBREATH, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $527.59.    Defendant appealed.

*Errors assigned* were rulings on evidence and instructions quoted in the opinion of the Superior Court.

*Levi M. Wise*, with him *John R. Henninger*, for appellant.

*S. F. Bowser*, with him *George A. Baldwin* and *A. L. Bowser*, for appellee.

OPINION BY MORRISON, J., July 16, 1913:

The defendant being the owner of about 200 acres of land situate in Forward township, Butler county, Pa., executed and delivered an oil and gas lease, dated October 27, 1909, for said land to the legal plaintiff, C. A. Silsby.   The only part of said lease important to the questions raised in this appeal is the following: "First party agrees to pay the half of the drilling expenses of the first well providing said first well does not produce five barrels of oil per day after thoroughly tested."   The word "thoroughly" is defined—in a thorough manner; unqualifiedly; fully; completely.

In November next after the execution of the lease, C. A. Silsby assigned his interest therein to H. W. Leonard and the latter took the place of Mr. Silsby and caused an oil well to be drilled on said land into the "one hundred-

foot sand" and stopped drilling at the depth of 1,070 feet and made a test of the well and it produced a little oil and considerable salt water and Mr. Leonard, claiming that he had complied with the above-quoted clause of the lease and that the well did not produce five barrels of oil a day, demanded from the defendant one-half of the alleged expenses of drilling the well. This the defendant refused to pay for the alleged reason that the plaintiff did not thoroughly test the well in question. The action is assumpsit and being put at issue it was tried before the court and a jury and resulted in a verdict for plaintiff of $527.59, and judgment being entered thereon, the defendant appealed.

The lease was silent in regard to the depth of the first or any other well or wells to be drilled thereunder. Therefore, in our opinion, the clause above quoted required the lessee to drill the first well to a proper depth to reasonably test the land for oil and gas in accordance with the knowledge of experienced oil men as to the territory in that vicinity at the time the test was to be made.

The first assignment of error is as follows: "The court below erred in sustaining objection to the following offer, page 163a: Plaintiff's witness, J. C. Gallagher, being on the stand, the following offer and ruling occurred: Q. Are you acquainted with other stratas or formations or oil rock in that field? Objected to. Mr. Wise: We propose to prove by the witness on the stand that about a mile northeast of the well in question wells were drilled to a lower strata than the hundred-foot and Snee sand and that oil was obtained, and also show that in a southwestern direction from the well in question and about the same distance wells were found in the Snee sand or lower strata than the hundred-foot sand that produced oil in paying quantities; this for the purpose of showing that no thorough test of the various oil bearing rocks existing at the location of this well was made. Objected to as incompetent and irrelevant. The Court: We will sustain the objection and seal a bill. Bill of exceptions sealed this

12th day of January, 1912, at the request of Counsel for Defendant."

It was shown that J. C. Gallagher, the witness, was a pumper of at least twenty years' experience and we think the defendant was entitled to prove by this witness the facts indicated in the proposition quoted in this assignment. We are unable to see how it can be said that the plaintiff made such a test as the lease required without drilling into the lower sands mentioned in the proposition which were said to be located below the hundred-foot sand in that locality, if the jury found from the evidence the existence of such sand or sands. It was undoubtedly a question for the jury to say, under proper instructions from the court, whether or not the plaintiff had thoroughly tested the well in question. We think this meant much more than simply drilling to such depth as the plaintiff chose and then testing the well. In our opinion a proper construction of the lease required the plaintiff to drill to such depth as was liable to tap an oil or gas sand in accordance with the knowledge and experience of oil men in that locality. To enable the jury to determine the controlling question on which the right of the plaintiff to recover depended, the defendant ought to have been permitted to prove, if he could, what was stated in his offer. The first assignment of error is sustained.

We are not convinced that the second assignment ought to be sustained. We do not think what the court said on the subject of that assignment did the defendant any harm.

The third assignment complains of the answer to plaintiff's third point: "If the jury find from the evidence that Leonard drilled the well No. 1, to the required depth and thereafter operated or pumped it in the manner employed and used in that locality by experienced men in the business, this would constitute or amount to a thorough test under the contract.

"Answer: The question of a thorough test of the well in question is one of fact, to be found by the jury, and what

would constitute such a test must be determined by the jury from the evidence, and in determining that question you will have respect to what were the approved methods in that locality at that time under like conditions."

If we are right in our view that the lease contemplated drilling the first well so as to test the sands that were known or believed to underlie the defendant's farm, then we think there was error in the answer to the above point. As we understand this answer it seems to be limited to the manner of testing the well after it was drilled. As we have already said we think "thoroughly tested," as used in the lease, means more than simply drilling a well to any depth that the plaintiff elected and then testing that well. The point contemplated a finding by the jury that Leonard drilled well No. 1 to the required depth; but how could the jury properly determine this question when the court refused, as appears in the first assignment, to permit the defendant to prove by an experienced oil man that in the vicinity of defendant's farm there were several oil sands known to exist lying below the hundred-foot sand in which Leonard stopped drilling? We think the learned court erred in answering plaintiff's third point and the third assignment is sustained.

The fourth assignment complains of the answer to defendant's fourth point as follows: "That it was the duty of plaintiff, under the lease in question, to make a thorough test of the first well drilled in all the prevailing sands in that community, and unless he did so, he cannot recover in this action.

"Answer: The question of what constitutes a thorough test under the contract of lease is one of fact for the jury under the evidence and not for the court."

We think there is error raised by this assignment. We have already indicated our view that a thorough test meant drilling, if necessary, into all of the sands underlying or supposed to underlie the plaintiff's farm, by experienced oil men. In view of the answer to the point we cannot understand how the jury could determine whether the

first well made a thorough test in that sense unless the court would permit them to have the testimony in respect to what was known by experienced oil men in regard to the prevailing sands in that vicinity. We think the fourth assignment must be sustained.

When the case shall be again tried we think it important that competent testimony should be admitted to enable the jury to determine, as a matter of fact, whether or not drilling into the hundred-foot sand as shown by the testimony amounted to a thorough test.

The judgment is reversed with a venire facias de novo.